UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT L. LUSSIER, et al<br>Plaintiff<br>v.<br><br>EASTERN YACHT SALES, INC.;<br>JEANNEAU AMERICA INC.; and<br>CHANTIERS JEANNEAU,<br>Defendants | CIVIL ACTION NO.<br>04 CV 11071 RCL |

Pursuant to Local Rule 16.1(D)(1), Fed. R. Civ. P. 16(b) and the Notice of Scheduling Conference, the parties by their respective counsel submit this Joint Statement of their respective positions in this case:

1. **Plaintiff's Position.**

   **A. Generally.**

   This is an action by the plaintiffs, as buyers/owners of a certain sailing vessel known as "The Phoenix," against the retail boat dealer, the manufacturer of the boat, and the company which imported the boat to the United States from its point of manufacture in France. Plaintiffs seek damages for the value of the boat as of on or about December 4, 2003 when the vessel was substantially damaged by an on-board fire caused by a manufacturing defect at the point of its manufacture and/or at the point of its "fit up" prior to delivery of the boat to the plaintiffs.

## B. Cause and Point of Origin of the Fire.

The fire scene was analyzed and the cause and point of origin of this fire have been determined.

Analysis of the fire patterns, combined with observations of the several systems and areas of the vessel revealed evidence of chaffing between the main power lead, from the engine starter to the cockpit engine control panel, and the transmission control cable at the starboard side rear of the engine compartment. All of the internal damage to the power lead was confined to the engine compartment.

The result of electrical engineering analysis has revealed that the red power lead is always in a hot condition with indications of abrasion between the wiring harness and a hard metallic object. The red power lead indicated excessive current flow from the point of abrasion to the end of the conductor, where it attached to the starter.

Metallurgical and materials examination of the transmission control cable revealed evidence of melted copper nodules in the wire strands, pieces of copper wire imbedded in the melted plastic cable cove, at the point of abrasion and evidence of arcing through the plastic control cable cover.

The cause of the fire is accidental in nature, in all probability, the result of the wiring harness and transmission control cable being installed too close together so that under normal operating conditions they were in contact with one another which caused abrasion and chaffing of the wiring harness and control cable cover. This would allow the power lead to the cockpit control panel to come in contact with the steel wire strands of grounded transmission control cable thereby initiating the fire sequence.

## C. Damages.

1.  The interior of the vessel has been damaged by smoke and fire. The decks and cockpit have been soiled with ashes and fire debris. There are several markings on the

blue Awlgrip from towing and fire boats. The jib sun cover has two soiled areas approximately five feet above the deck and approximately 10 feet above the deck.

2.  The companionway gelcoat and fiberglass have been damaged by heat, smoke and fire. The companionway Plexiglass sliding hatch and companionway board are deformed and have been damaged by heat, smoke and fire.

3.  The gelcoat has been scorched, charred or discolored by smoke at the port machinery space vent, the port aft cabin overhead hatch and the galley vent.

4.  The Harken electric winch located to port of the companionway on the cabin top was exposed to abnormally high heat and the base is damaged by smoke and heat. The heavy DC wiring has overheated and burned the insulation away. The electric switches are discolored by smoke.

5.  The main heater ductwork was cut beneath the starboard aft berth during the fire investigation.

6.  The yellow sunbrella cockpit cushions (eight) are soiled with smoke, soot and ash.

7.  The Yanmar 75 HP auxiliary diesel engine was operating at the time of the fire. The engine shut down during the fire without intervention (likely from oxygen exhaustion). The engine was ultimately sprayed with a dry chemical extinguisher. The following items are known to be damaged by the fire, smoke and extinguisher residue:

    (a).  The painted finish is burnt, scorched and/or discolored.

    (b).  The alternator belt has parted.

    (c).  The electric fuel pump is melted.

(d). The freshwater and raw water cooling hoses are burnt or melted.

(e). The starter and alternator were exposed to heat, smoke and corrosive dry chemical residue.

(f). The coolant recovery tank, hoses and raw water vented loop along with its hoses were damaged by heat, fire and smoke.

(g). The gear and throttle control cables were damaged with the machinery space.

(h). The Yanmar wiring harness fitted to the engine and between the engine and the switch panel, was damaged.

8. The following cabin lights were damaged by heat, smoke and fire: Galley lights, salon lights, navigation station lights, port and starboard aft cabin lights.

9. The 12 volt outlets and fans in the salon and aft port and starboard cabins were destroyed by fire and heat.

10. The following navigation, communication and entertainment electronics or controls and interface cables were damaged by heat and smoke:

    (a). ICOM, Model M602, VHF marine radio telephone.

    (b). ICOM, Model M602, SSB and VHF radio telephone with remote speaker.

    (c). Raymarine RL70C radar/multifunction display.

    (d). Raymarine PC interface box and cable.

    (e).    PC/SSB Modem and cable.

    (f).    Kenwood AM/FM/CD stereo with speakers.

    (g).    Webesto thermostat control.

    (h).    Vetus electronic barometer.

    (i).    IBM Thinkpad with Raytech software.

    (j).    Xantrex two battery monitor.

    (k).    Spectra watermaker control.

11.    The salon and aft port and starboard cabin headliners, upholstered hullside coverings, cushions, berths, and window coverings are damaged or destroyed by smoke, heat and fire.

12.    The starboard aft cabin molded fiberglass headliner is discolored by smoke and the port headliner is blackened and blistered by smoke, heat and fire.

13.    The spray dodger fabric and frame have been damaged by smoke, heat and fire.

14.    The salon and aft cabin port and starboard port lights and overhead hatches are discolored by smoke or damaged by heat. The overhead hatch gelcoat and fiberglass trim rings are discolored by smoke.

15.    The salon and aft starboard cabin teak paneling, bulkheads, cabinets, doors, drawers and furniture were damaged and discolored by smoke.

16. The port aft cabin teak paneling, bulkheads, cabinets, doors and drawers were heavily damaged by smoke and fire.

17. The aft head gelcoat surfaces are smoke damaged and the hardware, plumbing fixtures and equipment are discolored by smoke.

18. The cabin flooring is soiled from fire debris.

19. The overhead hatch retractable shades in the salon and aft cabins are damaged and/or destroyed by smoke and fire.

20. Companionway bulkheads, machinery space cabinetry, insulation, doors, and the companionway steps were damaged or destroyed by fire, heat and smoke.

21. The bilges are soiled and discolored by smoke.

22. The lazarette is soiled and discolored by smoke.

23. The breaker panels along with distribution panel and electronics cabinet interior and the wiring outboard of the navigation table are discolored by smoke.

24. Interior of all cabinets, in the salon and the two aft staterooms and the interior of the refrigerator, freezer, galley countertops, sink and stove are discolored by smoke.

25. The wiring harnesses throughout the vessel are discolored by smoke.

26. The anchor locker is discolored by smoke.

27. The forward storage locker is discolored by smoke.

28.   The master stateroom was generally undamaged, with the exception of the master stateroom door and door frame, which were damaged by heat and a minimal amount of smoke damage.

29.   The interior of the vessel has a strong smoke and fire odor.

Plaintiffs also claim loss of use, damages, the cost of dry-docking, the cost of personnel, materials and equipment to effect needing repairs, the cost of towing and other damages as well.

JEANNEAU AMERICA, INC's Additions To The Joint Scheduling Order.

<u>Statement of Jeanneau America, Inc's Position as to Liability and Damages</u>

Defendant Jeanneau America is a non- Massachusetts Corporation with its principal place of business in Annapolis, Maryland. At all times material to the matters in this suit, Jeanneau America was the United States distributor of yachts that were manufactured by Chantiers Jeanneau (a French business entity, that is separate and distinct from Jeanneau America and has yet to be served with process in this case). Jeanneau America sold the vessel in question to Eastern Yacht Sales of Rhode Island, Inc. as agent for Chantiers Jeanneau, the manufacturer of the vessel. Jeanneau America did not manufacture the vessel and did not issue the warranty on the vessel.

As to the liability of Jeanneau America at this time, the same is denied based upon lack of information. As to the liability of Chantiers Jeanneau, no position is taken at this time as Chantiers Jeanneau, has not been served with process.

Jeanneau America has sent discovery requests (Rule 34) to plaintiff and has yet to received a response. In the broad scheme, defendant would like to and, has requested a full inspection of the vessel and all items that were removed from the vessel that have been assigned as a possible cause of the fire. The removed items and the damaged vessel must be inspected at the same time and place. There are conflicting reports as to the cause and origin of the fire. Defendant requests that it be allowed a full inspection of the vessel by plaintiffs to determine the cause and origin of the fire and the reasonable cost of repairs of the vessel. Defendant is attempting to shed light and not heat on matter before the court.

Further, there appears to be some question as to the amount of damage to the vessel. Plaintiffs seek a replacement vessel. Plaintiffs may only recover the fair market value of the vessel at the time of the loss or the reasonable cost of repair (whichever is lower). Defendant requests the opportunity to explore these matters during discovery.

## I.     **DEFENDANT JEANNEAU AMERICA'S PROPOSED JOINT DISCOVERY PLAN.**

In light of the Amended Complaint and the fact that three of the four potential defendants have yet to be served with process and appear in the case, Jeanneau America suggests that the discovery schedule set forth by plaintiff is unrealistic and may cause prejudice to the parties that have yet to be served with the Amended Complaint.

Defendant will comply with the discovery limitations set forth by the Rules of Court, which allow for five depositions for **each side** (excluding, expert depositions). Further,

phased discovery may be appropriate in this matter if early discovery determines that this is truly a warranty claim.

In light of the foregoing, Jeanneau America suggests the following pretrial schedule: 

| EVENT | DATE |
|---|---|
| Amended Complaint Served | 15 November 2004 |
| Answers to Amended Complaint Filed | 15 December 2004 |
| Initial Discovery requests served by all parties | 15 January 2005 |
| Motions to join additional parties | 28 February 2005 |
| Completion of discovery from fact witnesses | 31 March 2005 |
| Plaintiffs' disclosure of expert reports | 18 April 2005 |
| Defendants' disclosure of expert reports | 16 May 2005 |
| Depositions of experts completed | 17 June 2005 |
| Summary Judgment Motions filed | 18 July 2005 |
| Oppositions to Summary Judgment Motions | 15 August 2005 |
| Status conference and or final pretrial | 18 September 2005 |

Trial date to be assigned

II.  **Other Agenda Items**

   a). Defendant request a Rule 34 Inspection of the vessel as previously noted above which has already been requested under the Rules of Court.

   b). Other parties have been added to this case that may not be present at the Rule 16 Conference.

III. Jeanneau America does not agree to trial before a Magistrate Judge.

\* Plaintiff agrees to this proposed schedule.

Respectfully submitted,

Plaintiffs
By their attorney,

*[signature]*

Robert G. Cohen BBO # 090340
188 Oaks Road
Framingham, MA 01702
(508) 875-0035

Defendant
Eastern Yacht Sales Inc.
By its attorney

_____
Steven McInniss, Esq.
38 Bellevue Avenue
Newport, RI 02840

Defendant
Jeanneau America Inc.
By its attorney

*[signature]* Brian P. Flanagan by RGC w/permission
Brian P. Flanagan, Esq.
88 Black Falcon Avenue
Boston, MA 02210

Defendant Chantiers Jeanneau
By its attorney

_____

10